UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRE BROUGHTON,

                    Plaintiff,          CASE NO.  01-CV-70074-DT
                                           JUDGE DENISE PAGE HOOD
  v.                                   MAGISTRATE JUDGE PAUL J. KOMIVES

MARK HAZELROTH, et al.,

                    Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT HAZELROTH'S MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 67)**

Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.     Plaintiff's Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.     Defendant Hazelroth's First Dispositive Motion was Granted in Part and Denied in Part. . . . . . . 3
      C.     Defendant Hazelroth's Second Dispositive Motion Was Denied. . . . . . . . . . . . . . . . . . . . . . . . . 4
      D.     Defendant Hazelroth's Third Dispositive Motion Is Pending. . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      E.     Fed. R. Civ. P. 56 ("Summary Judgment") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      F.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           1.    Criminal and civil state court procedural history . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           2.    Defendant Hazelroth's motion for summary judgment should be denied to the extent it
               seeks that plaintiff be precluded from relitigating the issue of probable cause. . . . . . . 10
               a.    Parties' arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               b.    Applicable law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
               c.    Plaintiff's claims are not precluded under *Darrah*. . . . . . . . . . . . . . . . . . . . . 16
               d.    Defendant Hazelroth's arguments in reply do not change this conclusion. . . . 19
           3.    Defendant Hazelroth's motion for summary judgment should be granted to the extent it
               seeks dismissal of plaintiff's conspiracy claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
               a.    Plaintiff has not stated a claim for conspiracy under 42 U.S.C. § 1985(3). . . . 24
               b.    To the extent plaintiff's conspiracy claim is brought pursuant to 42 U.S.C. §
                   1983, it does not survive summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . 26

III.    NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

I.    **RECOMMENDATION:**  The Court should grant in part and deny in part defendant

Hazelroth's motion for summary judgment.  (Doc. Ent. 67).  Specifically, the Court should deny

defendant Hazelroth's motion to the extent it seeks that plaintiff be precluded from relitigating

the issue of probable cause and grant the motion to the extent it seeks dismissal of plaintiff's

conspiracy claim.

II.    **REPORT:**

A.    **Plaintiff's Complaint**

Plaintiff's complaint is dated November 5, 2000.  At that time plaintiff was a state

prisoner incarcerated at Carson City Correctional Facility.  (Doc. Ent. 1 [Compl.] at 5).[1]  On

January 5, 2001, plaintiff's pro se complaint was removed to this Court pursuant to 28 U.S.C. §

1441 ("Actions Removable Generally.").[2]

Plaintiff brings his complaint pursuant to 42 U.S.C. §§ 1983 ("Civil action for

deprivation of rights") and 1985 ("Conspiracy to interfere with civil rights"). Compl. ¶ 1.  At

times relevant to the complaint, plaintiff was incarcerated at the Macomb Regional Correctional

Facility.  Compl. ¶ 2.  The eight named defendants are various employees of the Michigan State

Police Department and the Macomb Regional Correctional Facility who are being sued in their

individual and official capacities.  Compl. ¶¶ 3-10.

Plaintiff's claims arise out of a December 10, 1994 incident at the Macomb Regional

Correctional Facility (MRF) in New Haven, Michigan and the resulting search, arrest warrant,

and trial for three counts of escape from jail through violence.  Compl. ¶¶ 11-19.  Plaintiff was

_____

[1]Plaintiff's case was originally filed in Macomb County
Circuit Court.  (Doc. Ent. 9 [Rpl.] Ex. B).

[2]This case was referred to Magistrate Judge Goldman on April
11, 2001.  (Doc. Ent. 4).  That order was reassigned to me on
April 17, 2001.  (Doc. Ent. 6).

found not guilty on September 25, 1997.  Compl. ¶ 19.  In the instant action, he seeks

compensatory and punitive damages.  Compl. at 4.

**B.      Defendant Hazelroth's First Dispositive Motion was Granted in Part and Denied in Part.**

On January 5, 2001, defendant Mark Hazelroth, a Michigan State Police (MSP) Detective

Sergeant, filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. Ent. 3).  On

August 6, 2001, I filed a report recommending that the Court grant in part and deny in part

defendant Hazelroth's motion to dismiss.  (Doc .Ent. 10).  Interpreting defendant's motion as a

motion for summary judgment, I recommended that the Court (1) deny defendant's motion with

regard to plaintiff's federal civil rights claim; and (2) grant defendant's motion with regard to

plaintiff's state law claims of false arrest, false imprisonment, and malicious prosecution, on the

basis that they were barred by the statute of limitations.  I also recommended that, if the Court

agreed with my recommendation, it should further find that plaintiff is not entitled to equitable

tolling of the statute of limitations. On August 31, 2001, Judge Hood accepted my report and

recommendation and granted in part and denied in part defendant Hazelroth's motion.  (Doc.

Ent. 13).  Judge Hood dismissed all state law causes of action but declined to dismiss the federal

cause of action because the date on which plaintiff filed his complaint with the Macomb County

Circuit Court had not been clearly shown to be outside the limitations period.  On or about

September 11, 2001, plaintiff sent Judge Hood a "clarification" as to whether the other

[defendants] in this suit are part of this claim in this [C]ourt."  (Doc. Ent. 23).

On September 14, 2001, defendant Hazelroth filed an answer, jury demand, and

affirmative defenses.  (Doc. Ent. 14).  On September 28, 2001, plaintiff filed a motion to extend

time to respond to defendant Hazelroth's answer, affirmative defenses, and motion to dismiss.

3

(Doc. Ent. 19).  Plaintiff filed responses to defendant Hazelroth's answer and affirmative

defenses on October 22, 2001.  (Doc. Ent. 22).  On May 24, 2002, I entered an order deeming

moot plaintiff's motion for an extension of time.  (Doc. Ent. 27).[3]

**C.     Defendant Hazelroth's Second Dispositive Motion Was Denied.**

On March 19, 2004, defendant Hazelroth filed a motion for summary judgment.  (Doc.

Ent. 61).[4]  On May 3, 2004, plaintiff filed his response.  (Doc. Ent. 63).

On June 29, 2004, I filed a report recommending that the Court deny the motion.  (Doc.

Ent. 64).  Specifically, I recommended that the Court (1) find that the three-year statute of

limitations applicable to plaintiff's civil rights claim had expired, but (2) find that plaintiff was

entitled to equitable tolling of the statute of limitations with regard to his civil rights claim.

On July 9, 2004, defendant Hazelroth filed an objection to my report and

recommendation.  (Doc. Ent. 65).  On December 14, 2004, Judge Hood signed an order

accepting and adopting my June 29, 2004 report and recommendation; denying defendant

Hazelroth's March 19, 2004 motion for summary judgment; and denying defendant Hazelroth's

July 9, 2004 objection to my report and recommendation. (Doc. Ent. 66).[5]

---

[3]On September 20, 2001, plaintiff filed a petition for appointment of counsel.  (Doc. Ent. 15).  On May 24, 2002, I entered an order denying without prejudice plaintiff's petition for appointment of counsel.  (Doc. Ent. 25).
On May 9, 2003, plaintiff filed a motion for appointment of counsel.  (Doc. Ent. 50).  On June 5, 2003, I entered an order granting plaintiff's application for appointment and assigning counsel *pro bono*.  (Doc. Ent. 53).

[4]On March 23, 2004, plaintiff was paroled. *See* www.michigan.gov/corrections, "Offender Search".

[5]Attached to plaintiff's response is a copy of this order dated September 28, 2004.  Doc. Ent. 69 Ex. 5. According to plaintiff's August 25, 2005 response, the September 28, 2004 order was not docketed.  Rsp. at 7.

**D.      Defendant Hazelroth's Third Dispositive Motion Is Pending.**

On June 9, 2005, defendant Hazelroth filed a motion for summary judgment on the basis that the instant complaint "is barred by the doctrine of claim preclusion." (Doc. Ent. 67 [Mtn.] at 1).[6] On August 25, 2005, plaintiff filed a response. (Doc. Ent. 70 [Rsp.]).[7] On September 14, 2005, defendant Hazelroth filed a reply. (Doc. Ent. 71). On October 11, 2005, he filed a corrected reply. (Doc. Ent. 72 [Rpl.]).[8]

**E.      Fed. R. Civ. P. 56 ("Summary Judgment")**

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©.

> A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867, 872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). "In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . .

---

[6]On June 15, 2005, I entered an order requiring plaintiff to file any response by August 10, 2005. (Doc. Ent. 68).

[7]Exhibits 1-6 to the response were filed on August 24, 2005. (Doc. Ent. 69).

[8]Defendant Hazelroth has requested oral argument on this motion. Mtn. at 1; Rpl. at 1. This request should be addressed by Judge Hood in light of my limited authority with respect to defendant's dispositive motion. 28 U.S.C. § 636(b)(1)(B).

and assess the proof to determine whether there is a genuine need for trial." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).[9]

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). As the United States Supreme Courts stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a). *Anderson*, 477 U.S. at 250.

---

[9]The Sixth Circuit cited both *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) in support of this statement.

Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**F.      Analysis**

**1.      Criminal and civil state court procedural history**

According to plaintiff,

On December 10, 1994, [d]efendant Gainer[] stated that he observed a prisoner pass [p]laintiff Broughton a piece of paper.  Defendant [Gainer] asked [p]laintiff for that piece of paper and a pat down search[.] [B]oth were refused.  Defendant [Gainer] called Sgt. Hall, who instructed him to take [p]laintiff into the gymnasium and conduct a strip search on plaintiff.  Gainer and Bentz took [pl]aintiff in the bathroom[.]  P[l]aintiff refused the strip search. P[l]aintiff[] ran to unit[]2 bathroom where RUO Duggan allegedly observed [pl]aintiff[] flushing two packages down the toilet.  The yard crew arrived and [p]laintiff[] attempted to flee[.] [A]t this time [S]gt. Tinsley[,] [S]gt. Hall, RUO Duggan, RUO Knox and officer Bentz restrained [pl]aintiff, and he was cuffed and escorted to the segregation unit without further incident.

Compl. ¶ 11.

Defendant Hazelroth's original incident report is dated January 9, 1995.  Mtn. Ex. A at 2. On January 23, 1995, a felony warrant and felony complaint issued for three counts of escape from jail through violence contrary to Mich. Comp. Laws § 750.197c ("Jail or other place of confinement; assault of employee or custodian, or break and escape").  On both the warrant and the complaint, Insp J. Hutchins was the complainant and defendant Hazelroth was the complaining witness ("on information and belief") and the officer in charge.  Compl. ¶ 12; Mtn. at 2; Mtn. Exhibits B, C.  On February 2, 1995, plaintiff was arraigned at MRF before Magistrate John MacDonald and entered a plea of not guilty.  Defendant Hazelroth issued a supplemental incident report on February 3, 1995.  Mtn. Ex. A at 3.

7

The preliminary examination took place on February 13, 1995, before Judge Paul A. Cassidy in Macomb County District Court (Case No. C95-0174). Mtn. at 2; Mtn. Ex. D. MDOC staff members Inspector Jack Hutchins, Officer Mitchell J. Gainer, Officer Neil Gregory Siefker and Officer Ronald Hall testified on the people's behalf. Mtn. Ex. D at 3; Rsp. at 4. Afterward, Judge Cassidy stated:

> Court has heard all the testimony and is satisfied that each crime was committed and probable cause to believe the defendant committed them, and accordingly the Court will bind the matter of all three charges over to circuit court for trial.

Mtn. Ex. D at 37; Compl. ¶ 13.

Between June 12, 1995 and March 24, 1997, five supplemental incident reports were issued. Mtn. Ex. A at 4-9. On October 25, 1995, defendant Hazelroth interviewed inmates Wilcher (a.k.a. Shakr-Bey) and Dulaney. Mtn. Ex. A at 6. On January 8, 1997, plaintiff's criminal defense attorney was removed from the case. Mtn. Ex. A at 8. On March 21, 1997, trial was delayed for approximately three weeks for a hearing on a new motion by new defense counsel. Mtn. Ex. A at 9.

On May 19, 1997, Macomb County Circuit Court Judge Lido V. Bucci dismissed the third count (Case No. 95-521-FH). Rsp. at 4-5; Doc. Ent. 69 Ex. 1 at 3; Doc. Ent. 69 Ex. 2 at 14. The third count concerned an incident that took place in the yard. Rsp. at 5; Doc. Ent. 69 Ex. 2 at 12. Supplemental incident reports were issued on May 23, 1997 and August 21, 1997. Mtn. Ex. A at 10-11.

Trial began on September 23, 1997. Compl. ¶ 14; Rsp. at 5; Doc. Ent. 69 Ex. 1 at 5. According to plaintiff, defendant Gainer testified that "his hand and wrist [were] sprung from the

assault." Compl. ¶ 15.[10]  On September 24, 1997, MDOC staff members Officer Jeffery Van

Sickle, Sgt. Ronald Hall, Officer Kevin Dugan, Officer Dalan Knox, Officer Don Mellendorf,

and Capt. Anne Green testified.  Rsp. at 6; Doc. Ent. 69 Ex. 3 at 3.[11]  According to plaintiff,

defendant Knox testified at trial that "what she stated in her report about seeing prisoner knock

down officer Mellendorf <u>wasn't true</u>." Compl. ¶ 16.[12]  On September 25, 1997, Hazelroth

testified.  Rsp. at 5-6.[13]  Plaintiff was found not guilty of counts one and two on September 25,

1997.  Compl. ¶ 19; Doc. Ent. 69 Ex. 1 at 5.  On September 29, 1997, a supplemental incident

report was issued which documented the length of the trial and the jury's verdict.  Mtn. Ex. A at

12.

Plaintiff's Macomb County Circuit Court civil complaint (Case No. 00-4252 CZ) names

eight defendants: Hazelroth, Hutchins, Hall, Gainer, Siefker, VanSickle, Schirmer and Knox.

Compl. ¶¶ 3-10.  On or about January 12, 2001, defendants Hutchins, Hall, Gainer, Siefker,

---

[10]According to plaintiff, defendant Gainer does not make an allegation of injury in his Critical Incident Report.  Compl. ¶ 15.

[11]A videotape record log of Macomb County Circuit Court proceedings dated September 24 and 25, 1997 is attached to plaintiff's response.  Doc. Ent. 69 Ex. 3.

[12]Apparently, Knox's critical incident report states that plaintiff knocked down Mellendorf.  However, at trial, Knox testified that Broughton twisted out of his coat and she did not see plaintiff do anything deliberate to knock Mellendorf down. Doc. Ent. 69 Ex. 4 (9/24/97) 11:11-11:13.

[13]Hazelroth testified that he received this case in January 1995.  At some point, he received critical incident reports and misconduct reports that had been filed.  Hazelroth's office normally relies on investigative reports compiled by the prison. He did interview two prison inmate witnesses, both of whom had nothing to add.  After a preliminary examination, materials are taken to the prosecutor with a face sheet report.  He also testified that he is part of the external investigation.  Doc. Ent. 69 Ex. 4 (9/25/97) at 9:43-9:46; 9:50; 9:51; 9:55.

VanSickle, Schirmer, and Knox filed a motion for summary disposition in the Macomb County

Circuit Court.  (Doc. Ent. 20 Ex. G at 1; Doc. Ent. 9 Ex. B at 1).[14]  In an order dated March 27,

2001, Judge James M. Biernat granted defendants' motion and dismissed "[p]laintiff's claims in

his complaint against defendants Jack Hutchins, Ronald Hall, Mitchell Gainer, Neil G. Siefker,

Jeffrey VanSickle, James Schirmer, and Dalan Knox[.]" (Doc. Ent. 20 Ex. G at 5).[15]  Judge

Biernat found that service of process was insufficient and the applicable period of limitations had

run.  (Doc. Ent. 20 Ex. G at 3, 5).  Therefore, the only remaining defendant in this case is

Hazelroth.

**2.      Defendant Hazelroth's motion for summary judgment should be denied to the
          extent it seeks that plaintiff be precluded from relitigating the issue of probable
          cause.**

**a.      Parties' arguments**

Plaintiff alleges that defendants denied plaintiff's interest in liberty, falsely arrested him,

maliciously prosecuted him, and falsely imprisoned him.  Compl. ¶¶ 18, 20.  Plaintiff claims to

have suffered emotional and physical pain.  Compl. ¶ 21.  Plaintiff contends that "at all times

giving rise to this action, [d]efendants[] [were] acting under the color of State law."  Compl. ¶

22.

---

[14]The Macomb County Circuit Court docket sheet notes that attorney Allan Soros, currently an Assistant Attorney General in the Corrections Division, appeared on behalf of the seven defendants for the limited purpose of contesting jurisdiction based on lack of service of process.  (Doc. Ent. 9 at 2).  This Court's docket sheet lists attorney Soros as counsel for Hutchins, Hall, Gainer, Seifker, VanSickle, Schirner, and Knox. Defendant Hazelroth's notice of removal was filed with this Court on January 5, 2001 by James T. Farrell, currently an Assistant Attorney General in the Tort Defense Division.

[15]Judge Biernat's order notes that defendant Hazelroth was represented by separate counsel and had filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss in this Court.  *Id.* at 1 n.1.

In his response to defendant Hazelroth's answer to plaintiff's complaint, plaintiff stated that "defendant knew at all times relevant to this incident that plaintiff hadn't committed any crime," and "defendant took certain actions designed to conceal the fact[] that there was no basis for prosecuting the plaintiff and causing . . . his arrest."  Doc. Ent. 22 ¶ 20.  Plaintiff also stated that "defendant['s] continuing concealment of exculpatory information aggravated [plaintiff's] injuries," and "the illegal prosecution in [itself] was designed to cause plaintiff emotional and physical pain."  Doc. Ent. 22 ¶ 21.  Additionally, plaintiff stated:

> . . . defendant knew at all times relevant to this action that he knowingly violat[ed] the law . . . the investigation of these allege[d] assaults [was] to be conducted fair[ly] and impartially [to] afford[] plaintiff due process, [and] defendant conspired with the [officers] to violate plaintiff's federal rights[.]

Doc. Ent. 22 ¶ 22.

Defendant Hazelroth argues that "[p]laintiff is precluded from relitigating the issue of whether there was probable cause to arrest and/or prosecute him on the escape from jail charges, as that issue was decided by the state court during the course of his criminal proceeding."  He also argues that "the issue of probable cause was litigated in the state court." Citing *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), defendant Hazelroth argues that "[b]ecause Michigan law would preclude relitigation of the issue of probable cause under the doctrine of claim preclusion, [p]laintiff cannot relitigate that issue here."  Mtn. ¶ 3.  Defendant Hazelroth contends that "[t]he fundamental problem with [p]laintiff's [c]omplaint is that there has been a judicial determination that probable cause existed to arrest and charge [p]laintiff with escape from jail."  Mtn. at 4.

According to plaintiff, his civil rights complaint against defendant Hazelroth is based upon his "role in plaintiff's wrongful arrest and prosecution for three counts of escape from

prison by use of physical violence." Rsp. at 7. Plaintiff argues that he "is not preclud[ed] from litigating probable cause[.]" Rsp. at 9. Under *Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997), plaintiff argues, he "is not precluded from litigating his allegations of civil rights violations related to defendant[] Hazelroth's improper conduct in the underlying criminal prosecution." Rsp. at 12. Likening his case to *Hinchman v. Moore*, 312 F.3d 198 (6th Cir. 2002), plaintiff construes his complaint as asserting "that the MDOC staff prepared false reports in order to obtain the warrant for his arrest, and [that] the defendant Mark Hazelroth knew plaintiff was not guilty of any crime, and conspired with the MDOC officers to conceal exculpatory information from the magistrate, and did nothing to independently investigate this case prior to plaintiff being criminally charged." Rsp. at 13.

**b.      Applicable law**

Both parties cite *Albright v. Oliver*, 510 U.S. 266, 274 (1994) for the argument that "[a] claim of false arrest and malicious prosecution is actionable under 42 U.S.C. § 1983 where all of the elements of the state law tort are present and it is established that probable cause was lacking." Rsp. at 9; Mtn. at 3 ¶ 2. However, the multiple opinions in *Albright*, none of which garnered a majority, have "created confusion in the lower federal courts." John T. Ryan, Jr., Note, *Malicious Prosecution Under Section 1983: Do Citizens Have Federal Recourse?*, 64 Geo. Wash. L. Rev. 776, 803 (1996).

In *Ahlers v. Schebil*, 966 F. Supp. 518 (E. D. Mich. 1997), this Court considered within the qualified immunity context "Ahlers' Right to Have Exculpatory Evidence Disclosed." *Ahlers*, 966 F. Supp. at 529-533. After discussing the *Albright* decision, this Court decided to "examine Ahlers' right to exculpatory evidence under the Fourth Amendment." *Id*. at 532. The

12

Court found that "Defendants' pre-arraignment failure to disclose exculpatory evidence is not a

violation of the Constitution, except to the extent that it caused Ahlers to be charged and

arraigned without probable cause." *Ahlers*, 966 F.Supp. at 532-533.  This Court then considered

"Ahlers' Right Not to Be Charged with a Crime and Arraigned on It Without Probable Cause."

*Id.* at 533-534.  When considering "The Facts Supporting the Probable Cause Determination[,]"

this Court stated:

> Plaintiffs' assert that these facts and circumstances are insufficient to support
> probable cause because Stiltner is not a credible witness, due to her prior arrests
> and her substance abuse habits, and that to the extent they create probable cause,
> this showing would be substantially undercut if, with regard to the Washtenaw
> County Defendants' misconduct, Parsons and the Prosecutor had been provided
> with the video and audio tapes of the male side and had known that Stiltner was
> wired and that a tape of this existed. On the record currently before it, the Court
> finds there are questions of fact regarding probable cause and the impact of the
> evidence that Defendants failed to disclose.

*Ahlers*, 966 F.Supp. at 534.

Nevertheless, at this point the Court need not concern itself with resolving the standard

for a false arrest or malicious prosecution claim under § 1983, because it is clear that plaintiff's

accusation that defendant Hazelroth concealed exculpatory information (Doc. Ent. 22 ¶ 21) is not

barred by collateral estoppel - the basis for defendant Hazelroth's motion for summary judgment

(Mtn. at 1).[16]  "[R]es judicata and collateral estoppel relieve parties of the cost and vexation of

---

[16]Technically, plaintiff's response to defendant Hazelroth's
answer to the complaint is not a permissible pleading.  As stated
in Fed. R. Civ. P. 7(a): "There shall be a complaint and an
answer; a reply to a counterclaim denominated as such; an answer
to a cross-claim, if the answer contains a cross-claim; a
third-party complaint, if a person who was not an original party
is summoned under the provisions of Rule 14; and a third-party
answer, if a third-party complaint is served.  No other pleading
shall be allowed, except that the court may order a reply to an
answer or a third-party answer."  However, this report and
recommendation treats ¶ 21 of the October 22, 2001 response as

multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions,

encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana*

*v. United States*, 440 U.S. 147, 153-154 (1979)).  "[T]he concept of collateral estoppel cannot

apply when the party against whom the earlier decision is asserted did not have a 'full and fair

opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95 (1980)

(citing cases).  "Where a party has had a 'full and fair opportunity' to litigate an issue in earlier

state proceedings, he is precluded from relitigating the same issue in a later federal case."

*Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) (citing *Allen v. McCurry*, 449 U.S.

90 (1980)).[17]

---

subsumed in ¶ 17 of plaintiff's complaint: "Defendants . . .
conspired together by editing their investigative reports to
conceal exculpatory information that would have defeated probable
cause, to issue an arrest warrant."

[17]In *Coogan*, the Sixth Circuit stated that "[a]n action for
damages under § 1983 based on a claim of malicious prosecution is
properly dismissed when the plaintiff fails to show that all the
elements of the charge under state law are present." *Coogan*, 820
F.2d at 174 (citing *Singleton v. City of New York*, 632 F.2d 185,
193-95 (2d Cir.1980)).
   However, in *Frantz v. Village of Bradford*, 245 F.3d 869 (6th
Cir. 2001), the Sixth Circuit noted that Coogan was a pre-
*Albright* decision and held that:  "*Albright* precludes reliance on
state law to define a § 1983 federal cause of action[,]" and
"establishing a § 1983 cause of action requires a constitutional
violation and cannot differ depending on the tort law of a
particular state." *Frantz*, 245 F.3d at 874-875 (6th Cir. 2001).
   Later, *Frantz* itself was criticized.  In *Frantz*, the Sixth
Circuit stated that "the Fourth Amendment does not support a
separate malicious prosecution claim independent of the
underlying illegal seizure." *Frantz*, 245 F.3d at 876.  However,
in *Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir.2001), the
Sixth Circuit stated that "the *Frantz* majority explicitly chose
to disregard a prior binding precedent of this circuit that had
interpreted *Albright* as authorizing a Fourth Amendment malicious
prosecution claim." *Darrah*, 255 F.3d at 310 (citing *Spurlock v.
Satterfield*, 167 F.3d 995, 1006 & n. 19 (6th Cir. 1999)).

As defendant notes, "[i]f it shall appear to the magistrate at the conclusion of the preliminary examination that a felony has been committed and there is probable cause for charging the defendant therewith, the magistrate shall forthwith bind the defendant to appear before the circuit court of such county, or other court having jurisdiction of the cause, for trial." Mich. Comp. Laws § 766.13 ("Discharge of defendant; binding defendant over for trial"); Mtn. ¶ 3. "A claim of false arrest requires proof that the arrest lacked probable cause. Similarly, a malicious prosecution claim requires proof that there was no probable cause for the proceeding." *Burns v. Olde Discount Corp.*, 212 Mich. App. 576, 581; 538 N.W.2d 686 (1995) (internal citation omitted).

"In determining whether a state court's adjudication of an issue has preclusive effect for purposes of an action under 42 U.S.C. § 1983, the Court must apply the collateral-estoppel law of that state." *Padlo v. VG's Food Center, Inc.*, 2005 WL 1774081 (E. D. Mich. Jul. 26, 2005) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir.2001)).[18] *See also Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."). "Under Michigan law, issue preclusion applies when 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Darrah*,

---

[18]A copy of this opinion is attached to plaintiff's response. Doc. Ent. 69 Ex. 6.

255 F.3d at 311 (citing *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630-31 (1990));

*Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir. 2002) (same).

### c.      Plaintiff's claims are not precluded under *Darrah*.

As previously noted, plaintiff states that "the MDOC staff prepared false reports in order

to obtain the warrant for his arrest, and [that] the defendant Mark Hazelroth knew plaintiff was

not guilty of any crime, and conspired with the MDOC officers to conceal exculpatory

information from the magistrate, and did nothing to independently investigate this case prior to

plaintiff being criminally charged." Rsp. at 13. Therefore, plaintiff's argument that he is not

precluded from litigating probable cause in the instant case, Rsp. at 9-13, is arguably based upon

the third *Darrah* requirement.

As to the third requirement, Sixth Circuit case law instructs that claims of fabrication of

evidence, making materially false statements, or supplying a false version of the facts are distinct

from the state court's determination of probable cause. For example, in *Stemler v. City of

Florence*, 126 F.3d 856 (6th Cir. 1997) the Court stated that "the existence of probable cause

would negate the possibility of liability under a state-law malicious prosecution theory, and

therefore under a federal constitutional theory as well, at least to the extent that *Stemler* alleges

that the defendants sought to prosecute her despite knowing that there was not probable cause to

do so." *Stemler*, 126 F.3d 856, 871-872. The Court also stated: "A claim of fabrication of

evidence does not require a conclusion that the state did not have probable cause to prosecute the

claimant. The state court only found that there was probable cause to prosecute Stemler, and

made no findings with regard to any claim of fabrication of evidence. Thus, since the state court

in the civil suit made no findings on this issue, and the court in the state criminal case did not

make any findings on this issue that were necessary to the final judgment ( *i.e.,* Stemler's acquittal), she would not be estopped from pursuing this claim."). *Id*. at 872.

Furthermore, in *Darrah*, the Court held that "the state court's determination of probable cause at the preliminary hearing is not identical to the issue Darrah argues today, that being whether Officer Bragg made materially false statements to the state judge that formed the basis of that court's probable cause determination." *Darrah*, 255 F.3d at 311.  Later, the Court stated: "[W]hile not every criminal defendant turned civil plaintiff will prevail in a § 1983 action based on malicious prosecution or a similar claim after being acquitted on criminal charges, *Darrah* compels our conclusion that collateral estoppel does not bar Hinchman from asserting her claims ["'the central issue [here] is whether the detectives ... supplied the prosecutor's office and the state court with a false version of the facts.'"]." *Hinchman v. Moore*, 312 F.3d 198, 202-203 (6th Cir. 2002).[19]

_____

[19]As to the fourth *Darrah* requirement, an argument could be made that, taking plaintiff's claims as true, he did not have a "full and fair opportunity" to litigate his claims due to the false reports and concealment of exculpatory evidence prior to the probable cause determination. *See Haupt v. Dillard*, 17 F.3d 285, 290 n.5 (9th Cir. 1994) (malicious prosecution claim would not be barred by preliminary examination finding of probable cause where state actors subsequently discovered exculpatory evidence but suppressed it); *Snyder v. City of Alexandria*, 870 F. Supp. 672, 689 (E.D. Va. 1994) ("[I]f, as Snyder alleges, the police withheld exculpatory evidence concerning the victim's identification and the alleged confession, then it follows that Snyder did not have a full and fair opportunity to litigate these issues in the Virginia proceedings."); *cf. Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 333-34 (1971) (party is denied full and fair opportunity to litigate if "he did not have a fair opportunity procedurally, substantively and evidentially to pursue his claim"; an appropriate inquiry is "whether without fault of his own the [party] was deprived of crucial evidence or witnesses"); *Butler v. City of North Little Rock, Ark.*, 980 F.2d 501, 503 (8th Cir. 1992) (citations omitted) ("For a state decision to have preclusive effect . . . the party against whom the earlier decision was rendered must have been

**d.   Defendant Hazelroth's arguments in reply do not change this conclusion.**

afforded a 'full and fair opportunity' to litigate the claim or issue in the earlier case.  'Full and fair opportunity' in this context means that the state proceeding must follow the requirements of the Due Process Clause of the Fourteenth Amendment.").

Defendant Hazelroth has supplied the Court with a copy of the transcript from the February 13, 1995 preliminary examination.  Mtn. Ex. D.  Defense counsel Daniel Keith cross-examined each of the people's witnesses: Inspector Jack Hutchins; Officer Mitchell J. Gainer; Officer Neil Gregory Siefker and Officer Ronald Hall.  Mtn. Ex. D at 3.  Defendant Hazelroth points this out in his motion.  Mtn. at 2.  He also argues that "[t]he preliminary examination at which Plaintiff was bound over for trial provides a fair and reliable determination of probable cause."  Mtn. at 4.

However, as plaintiff notes (Rsp. at 12), the Sixth Circuit has stated:  "We do not hold that every determination in a preliminary hearing should be given preclusive effect in a subsequent § 1983 action.  Some preliminary hearings are little more than formalities.  Also, even when an opportunity for full adversary proceedings is afforded, strategic concerns may counsel against engaging in such an exercise at the early stages of a criminal proceeding.  However, where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action."  *Coogan*, 820 F.2d at 175.

Furthermore, the Sixth Circuit has stated: "A state court judge ruling on the presence or absence of probable cause in a criminal action must necessarily take into account the veracity of the officers' statements.  At the preliminary hearing in the present case, *Hinchman* was free to cross-examine the two defendants and to take the stand herself in an effort to discredit their testimony. Whether or not she did so, *Darrah* allows her a second bite at the probable-cause apple, a result that is diametrically opposed to the collateral-estoppel concept."  *Hinchman*, 312 F.3d at 203.  Finding that it was bound by Darrah, the Court went on to the merits of Hinchman's claims. *Id*.

Although the specifics of plaintiff's claims are not clear, such as the nature of the allegedly exculpatory evidence, defendant Hazelroth's motion for summary judgment is primarily based upon the doctrine of claim preclusion (Mtn. at 1) - an argument which does not really dispute the merits of plaintiff's claims.  Therefore, the Court should be hesitant to grant summary judgment on the basis that plaintiff was afforded a full and fair opportunity to contest his probable cause determination.

**i.**      As previously noted, plaintiff claims in part that defendant Hazelroth "did nothing to independently investigate this case prior to plaintiff being criminally charged." Rsp. at 13. In reply, defendant Hazelroth characterizes plaintiff's argument as questioning defendant Hazelroth's investigation of the case: "Plaintiff argues that the state court determination of probable cause should not have preclusive effect in his federal court § 1983 case because Hazelroth knew or should have known that the MDOC employees had falsified their reports, if only he had independently investigated this case prior to [p]laintiff being criminally charged.[] Plaintiff, in effect, asserts that absent a reasonable investigation by Det. Hazelroth, the state court judge's finding of probable cause is negated, or, at a minimum, cannot have preclusive effect in a subsequent federal court § 1983 case." Rpl. at 1-2.

It is true that "[a] policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." *Criss v. City of Kent*, 867 F.2d 259, 262-263 (6th Cir. 1988). *See also Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused."). "'Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.' To hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me.' And if the arresting officer

failed to investigate such claims prior to arrest, the arrestee could bring a section 1983 suit." *Criss*, 867 F.2d at 263 (quoting *Baker v. McCollan*, 443 U.S. 137, 145-146 (1979)).

Furthermore, "[t]he probability of criminal activity is assessed under a reasonableness standard based on 'an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.'" *Crockett v. Cumberland College*, 316 F.3d 571, 580-581 (6th Cir. 2003) (quoting *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir.1999)). "[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (immunity case). "Once an officer establishes probable cause, he or she is under no obligation to continue investigating and may instead pursue the arrest of a suspect." *Crockett*, 316 F.3d at 581.

Citing *Criss v. City of Kent*, 867 F.2d 259 (6th Cir. 1988) and *Crockett v. Cumberland College*, 316 F.3d 571 (6th Cir. 2003), defendant argues that "the review of whether probable cause sufficient to make a lawful arrest or to prosecute existed is limited to only those factual circumstances known to the officer at the time of the arrest." Rpl. at 2-3. However, the dispute between plaintiff's claim that defendant Hazelroth "did nothing to independently investigate this case prior to plaintiff being criminally charged[,]" Rsp. at 13, and defendant Hazelroth's argument regarding the duty to investigate really goes to the merits of plaintiff's claim. Furthermore, it addresses only the portion of plaintiff's claims against defendant Hazelroth based on the theory that he did not independently investigate plaintiff's case prior to the criminal charge.

20

**ii.**     Defendant's reply also argues that "collateral estoppel precludes a plaintiff in a civil case from re-litigating claims that were previously addressed in criminal proceedings.  In support of this argument, he cites *In re Forfeiture of $1,159,420*, 194 Mich. App. 134, 145-146; 486 N.W.2d 326 (1992)[20] and *Knoblauch v. Kenyon*, 163 Mich. App. 712, 716; 415 N.W.2d 286 (1987)[21].  However, as concluded in Section II.F.2.c, plaintiff is not relitigating the same claim as was litigated in state court.

**iii.**     Plaintiff alleges that defendants "conspired together by editing their investigative reports to conceal exculpatory information that would have defeated probable cause[] to issue an arrest warrant."  Compl. ¶ 17.  Plaintiff also stated that "defendant['s] continuing concealment of exculpatory information aggravated [plaintiff's] injuries[.]"  Doc. Ent. 22 at ¶ 21.  As previously noted, plaintiff alleges that defendant Hazelroth "knew plaintiff was not guilty of any crime[.]" Rsp. at 13.

According to defendant Hazelroth, plaintiff has not submitted any evidence to support his claim that defendant Hazelroth "knew that MDOC employee[s] falsified their reports[.]" Rpl. at 3.  In any event, defendant Hazelroth argues, his "alleged knowledge [with regard to plaintiff's assertion that defendant knew that the MDOC employees falsified reports] did not influence the state court judge's decision to find probable cause for Plaintiff's arrest and prosecution because

---

[20]"Crossover estoppel involves issue preclusion in a civil proceeding following a criminal proceeding and vice versa."  *In re Forfeiture of $1,159,420*, 194 Mich.App. 134, 145, 486 N.W.2d 326, 333 (1992) (citing *People v. Gates*, 434 Mich. 146, 155, 452 N.W.2d 627 (1990)).

[21]"[W]here a full and fair determination has been made in a previous criminal action that the client received the effective assistance of counsel, the defendant-attorney in a subsequent civil malpractice action brought by the same client may defensively assert collateral estoppel as a bar."  *Knoblauch v. Kenyon*, 163 Mich.App. 712, 725, 415 N.W.2d 286, 292 (1987).

Hazelroth did not testify at the probable cause hearing." Rpl. at 3. According to defendant, he "accepted the MDOC employees' written reports at face value, he conducted no independent investigation, and did not testify at the preliminary examination. Thus, there is no indication that [he] mislead the Court in any way. Thus, this Court should conclude that no reasonable jury could find that Det. Hazelroth influenced the state court's determination of probable cause in any way." Rpl. at 4.

Like defendant Hazelroth's argument regarding his duty to investigate, this argument goes to the merits of plaintiff's claim regarding defendant Hazelroth's knowledge with respect to plaintiff's guilt.[22]

**3.      Defendant Hazelroth's motion for summary judgment should be granted to the extent it seeks dismissal of plaintiff's conspiracy claim.**

Plaintiff claims that defendant Knox "conspired with the [d]efendants to prosecute [plaintiff], which [defendant Knox] knew to be false." Compl. ¶ 16. Plaintiff claims that defendants Hutchins, Hazelroth, Gainer, Siefker, Knox, Hall, Schiner and VanSickle "conspired together by editing their investigative reports to conceal exculpatory information that would have defeated probable cause[] to issue an arrest warrant." Compl. ¶ 17. In his response to defendant Hazelroth's answer to plaintiff's complaint, plaintiff states: "defendant knew that these [officers] conspired against plaintiff to violate plaintiff's constitutional rights," and

---

[22]The contours of the "knowledge" portion of plaintiff's claim are somewhat unclear. Allegations regarding Hazelroth's knowledge are contained in the response to defendant Hazelroth's answer to the complaint. Doc. Ent. 22 ¶¶ 20, 22. As previously noted, such a filing is not permissible under Fed. R. Civ. P.7(a). However, the allegation that defendant Hazelroth "knew plaintiff was not guilty of any crime," is contained in plaintiff's response to defendant Hazelroth's motion. Rsp. at 13. Therefore, this report and recommendation treats defendant Hazelroth's knowledge as a theory on which the claim against defendant Hazelroth is based and something best left to examination on the merits.

"defendant alon[g] with the [officers] had concealed exculpatory information," and "defendant failed to disclose to the magistrate this exculpatory information that might have affected the [magistrate's] determination of the existence of probable cause."  Doc. Ent. 22 ¶ 17.  Plaintiff further states that defendant Hazelroth "conspired with the officer[]s to violate plaintiff's federal rights[.]" Doc. Ent. 22 ¶ 22.

Defendant Hazelroth argues that "[p]laintiff fails to plead his conspiracy claim with specificity, and, thus, that claim must also be dismissed."  Mtn. ¶ 4.  Defendant Hazelroth contends that "[p]laintiff's allegations of a civil conspiracy among the MDOC employees and Det/Sgt. Hazelroth are too vague and nonspecific to state a conspiracy claim under 42 [U.S.C.] § 1983."  Mtn. at 4.

Plaintiff argues that his "conspiracy claim is adequate[.]"  Rsp. at 14.  Plaintiff contends that he "has alleged more than conclusory statements in his complaint and responsive pleadings." Rsp. at 14-15.

### a.   Plaintiff has not stated a claim for conspiracy under 42 U.S.C. § 1985(3).

The conspiracy claim in plaintiff's complaint is based upon 42 U.S.C. § 1985.  Compl. ¶ 1; Rsp. at 3, 7.  42 U.S.C. § 1985 governs "Conspiracy to interfere with civil rights".  With regard to "depriving persons of rights or privileges", the statute provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a

23

> Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). "[C]onclusory allegations are not sufficient to state a claim under 42 U.S.C. §§ 1985(3)[.]" *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1971). "[W]e are required to accept only well pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts." *Blackburn*, 443 F.2d at 124 (internal citations omitted).

"[T]o make out a violation of § 1985(3) . . . the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-829 (1983).[23]

As to the second element, the Supreme Court has stated that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators'

---

[23] "[C]laims under § 1985(3), unlike those under 42 U.S.C. § 1983, need not allege that the deprivation occurred at the hands of the state." *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 225 (6th Cir. 1991) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 99 (1971); *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 832 (1983)). *See also O'Neill v. Grayson County War Memorial Hospital*, 472 U.S. 1140, 1144 (6th Cir. 1973).

action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). "A class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (citing *Hicks v. Resolution Trust Corporation*, 970 F.2d 378, 382 (7th Cir.1992)). *See also Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973) ("§ 1985(3)'s protection reaches clearly defined classes, such as supporters of a political candidate. If a plaintiff can show that he was denied the protection of the law because of the class of which he was a member, he has an actionable claim under § 1985(3)."); *O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140, 1145 (6th Cir. 1973) ("It is clear from the abovequoted language, however, that the requisite invidiously discriminatory intent must be class-based.").

Assuming plaintiff's conspiracy claim is brought pursuant to 42 U.S.C. § 1985(3), plaintiff has not alleged that the motive for conspiracy was a class based animus.  Therefore, the Court should dismiss plaintiff's conspiracy claim to the extent it is based upon § 1985(3) for failure to state a claim upon which relief may be granted. *See In re Jackson Lockdown/MCO Cases*, 568 F.Supp. 869, 883 (E. D. Mich. 1983) ("McDonald has not alleged that MCO's actions were directed against him simply as a member of the class of prisoners generally but rather 'as a member of a class of inmates at the SPSM'.") (internal footnote omitted).

**b.     To the extent plaintiff's conspiracy claim is brought pursuant to 42 U.S.C. § 1983, it does not survive summary judgment.**

Although the conspiracy claim in plaintiff's complaint is based upon 42 U.S.C. § 1985, Compl. ¶ 1; Rsp. at 3, 7, the case law relied on by the parties (*Gutierrez*, *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985)), with regard to the instant motion suggests that plaintiff's

25

conspiracy claim has been interpreted as one brought pursuant to 42 U.S.C. § 1983.  Mtn. at 4 ¶ 4, 4-5; Rsp. at 14-15.

**i.**     As an initial matter, "[i]t is well-established that the unavailability of a conspiracy claim under § 1985 does not preclude a conspiracy claim under § 1983." *Ahlers v. Schebil*, 966 F.Supp. 518, 536 (E. D. Mich. 1997) (Rosen, J.) (referencing *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989) and *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987)).

There are, at least, two distinctions between conspiracy claims brought under § 1985(3) and those brought under § 1983. First, "[c]onspiracies to deprive one of his constitutional rights are actionable under Section 1983, and a showing of class-based discrimination is not a prerequisite to liability." *Pizzolato v. Perez*, 524 F.Supp. 914, 923 (E. D. La. 1981) (citing *Mizell v. North Broward Hospital Dist.*, 427 F.2d 468, 472 (5th Cir. 1970)[24] and *Crowe v. Lucas*, 595 F.2d 985, 990 (5th Cir. 1979)).[25]  Second, "the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or

---

[24] "[T]o the extent *Mizell* stands for the general proposition that a federal rule on tolling state statutes of limitations should be formulated and applied in civil rights cases, we decline to follow that decision. Such a principle would be in conflict with *Auto Workers v. Hoosier Cardinal Corp.*, 1966, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192. Moreover, *Mizell* may no longer be sound law in the Fifth Circuit. The court in *Blair v. Page Aircraft Maintenance, Inc.*, 5 Cir. 1972, 467 F.2d 815, refused to fashion a federal tolling rule and relied on the limitation period and tolling principles prescribed by the state." *Ammlung v. City of Chester*, 494 F.2d 811, 816 (3d Cir. 1974).

[25] *But see Johnson-Kirk v. OB GYN Womenservices, P.C.*, No. 93-CV-0702E(F), 1995 WL 307589, *3 (W.D.N.Y. May 15, 1995) (allegation of class-based animus is required for state involvement conspiracy); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994) ("we previously have applied the racial or class-based animus requirement to claims of conspiracy under color of state law.").

usage, of any State or Territory.' This . . . requires that the plaintiff show that the defendant acted 'under color of law.'" *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).

**ii.**    "To establish a civil conspiracy under § 1983, Plaintiff has the burden of showing (1) that two or more people entered into an agreement to violate the victim's civil rights, (2) that the alleged co-conspirators shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that caused injury to him." *Pizzuto v. County of Nassau*, 239 F.Supp.2d 301, 308 (E. D. N. Y. 2003).

"[C]onspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). "For a Section 1983 conspiracy to survive a motion for summary judgment, specific facts showing either the existence or the execution of the claimed conspiracy must be set forth by the plaintiff. Furthermore, these facts must show overt acts related to the promotion of the conspiracy and some link between the alleged conspirators. Finally, plaintiff must present facts that the conspirators agreed to commit an act which deprived the plaintiff of a right, privilege or immunity secured by the Constitution or the laws of the United States. It is essential that the conspiratorial conduct in fact resulted in a violation of plaintiff's constitutional rights." *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W. D. Mich. 1988) (internal citations omitted).

**iii.**    The Sixth Circuit has examined what constitutes a vague and conclusory allegation. For example, in *Gutierrez*, the Court stated: "Plaintiff's allegations of conspiracy are contained in two paragraphs of his amended complaint. In paragraph 37 plaintiff states that 'his job termination was the ultimate result of the conspiracy of Defendants to punish Plaintiff for his

refusal to whitewash his investigation of city contracts.' In paragraph 49, plaintiff states that defendants 'conspired against Plaintiff to unlawfully deprive him of his employment, his good name and reputation as punishment for Plaintiff's continued refusal to whitewash city contracts.' A review of the allegations contained in these paragraphs clearly indicates that they are insufficient to withstand a motion for summary judgment. Plaintiff's allegations lack the requisite material facts and specificity necessary to sustain a conspiracy claim." *Gutierrez*, 826 F.2d at 1539.

In *Mulazim v. Slusher*, No. 89-1510, 894 F.2d 1336 (6th Cir. 1990) (unpublished), plaintiff "complained that numerous guards and supervisors at Huron Valley Men's Facility (HVMF) violated his constitutional rights. He claimed that the defendants conspired with defendant Slusher to have him classified to segregation for misconduct. Mulazim contended that his segregation deprived him of access to the courts. Additionally, although it is not entirely clear, it seems from a close reading of the complaint that Mulazim alleged that his transfer from Huron Valley to Marquette Branch Prison was also a result of the conspiracy." *Mulazim*, 894 F.2d 1336. In concluding that plaintiff had not stated a claim, the Court stated: "Although a plaintiff may address the basic elements of a cause of action, he will fail to state an adequate claim if his allegations are premised upon mere conclusions and opinions." *Id*.

In *Nguyen v. State of Mich.*, No. 92-1657, 1993 WL 281462 (6th Cir. July 27, 1993), plaintiff "alleged that his car was illegally seized without a warrant, that all the defendants conspired to apply the nuisance statute in a draconian fashion, and that they discriminated against him because he is Vietnamese." *Nguyen*, 1993 WL 281462 at **1. The Court held that "the district court correctly dismissed Nguyen's federal claims on defendants' motion for

summary judgment because Nguyen failed to present evidence upon which a reasonable jury could find for him." *Nguyen*, 1993 WL 281462, **3.

In *Watson v. Lecureux*, No. 93-1542, 1993 WL 473723 (6th Cir. Nov. 15, 1993), where plaintiff had alleged a "conspiracy, to kill him", the Court stated: "A federal court need not accept as true legal conclusions, or vague and conclusory allegations of a conspiracy to create a valid claim under § 1983 when none exists." *Watson v. Lecureux*, No. 93-1542, 1993 WL 473723, **1 (6th Cir. Nov. 15, 1993) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir.1987)).

In *Holloway v. Ohio*, 179 F.3d 431 (6th Cir. 1999), the Sixth Circuit stated: "Here, Plaintiff's complaint alleged that Clermont County and Brush conspired to violate her civil rights in that 'defendants are working to gather [sic] to keep her and her sons apart therefor depriving Mrs. Holloway of any happiness.' (J.A. at 9.) However, as found by the magistrate, Plaintiff's complaint failed to set forth any specific actions on the part of Clermont County and Brush to support her conspiracy claim. The subsequent ruling by the Ohio Court of Appeals, that the CCJC failed to properly notice Plaintiff, does not change the fact that she failed to properly plead her complaint on this issue." *Holloway*, 179 F.3d at 446.[26]

---

[26]The cited *Holloway* opinion has been vacated. *Holloway v. Ohio*, 197 F.3d 236 (6th Cir. 1999). However, on rehearing en banc, the Court stated: "[W]e reverse the district court's ruling that Sally Brush enjoys absolute immunity for her conduct in this case, and its grant of summary judgment in her favor on that basis. The district court's grant of summary judgment to Clermont County, however, is affirmed." *Holloway v. Brush*, 220 F.3d 767, 770 (6th Cir. 2000).

It is arguable whether plaintiff's complaint sufficiently alleges a conspiracy claim.  In

any event, as defendant Hazelroth argues in support of his motion, "[a]fter reviewing [p]laintiff's

pleadings and exhibits, this Court [should] find that he [has not] established a civil conspiracy."

Mtn. at 5.

Plaintiff has not satisfied his burden to survive a Fed. R. Civ. P. 56 motion on the

conspiracy claim.  As previously stated:

> The movant bears the burden of demonstrating the absence of all genuine issues
> of material fact.  *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir.
> 1986).  The moving party need not produce evidence showing the absence of a
> genuine issue of material fact.  Rather, "the burden on the moving party may be
> discharged by 'showing' – that is, pointing out to the district court – that there is
> an absence of evidence to support the non-moving party's case." *Celotex Corp. v.
> Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party discharges that burden,
> the burden shifts to the non-moving party to set forth specific facts showing a
> genuine triable issue.  Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

Here, defendant Hazelroth has demonstrated the absence of a genuine issue of material fact.  As

he argued in his motion, "[t]here is no evidence that an agreement existed between the MDOC

employees and Det/Sgt. Hazelroth to injure [p]laintiff."  Mtn. at 5.[27]

Plaintiff's citations to pre-trial events do not evidence a conspiratorial agreement.

Plaintiff points out that, at the preliminary examination, Hutchins testified that he was not

present at the scene and that his report was "a compilation of information that was provided to

---

[27]Defendant Hazelroth also states that "[p]laintiff has not
established that he was injured by an unlawful act taken by
Hazelroth since Hazelroth did not testify at the preliminary
examination.  Hazelroth conducted an investigation into
assaultive/attempted escape allegations made by prison officials.
He interviewed a number of witnesses, all of whom gave fairly
consistent statements regarding [p]laintiff's behavior."  Mtn. at
5.  These arguments need not be addressed with regard to
plaintiff's conspiracy claim, as there is no evidence regarding
the existence of a conspiratorial agreement.

[him] by other corrections officers[.]"  Mtn. Ex. D at 7.  Plaintiff also cites portions of testimony in support of his argument that the MDOC staff members Gainer, Siefker and Hall testified "to varying levels of physical contact by [plaintiff] without their consent[,]" at the preliminary examination.  Rsp. at 4.  Plaintiff additionally alleges that Count 3 "was dismissed because the prosecution was not able to produce *res gestae* witnesses."  Rsp. at 5.[28]  At trial, defendant Hazelroth testified that he worked with Hutchins.  Doc. Ent. 69 Ex. 4 (9/25/97) at 9:44-9:46.  He also testified that after a preliminary examination, materials are taken to the prosecutor with a face sheet report.  *Id*. at 9:50-9:51.  Plaintiff also claims that "[o]f the MDOC staff who testified, several agreed that their testimony differed in significant detail, or conflicted with their written reports."  Rsp. at 6.  Although plaintiff was ultimately found not guilty, these citations to the preliminary examination testimony, motion hearing, and trial testimony do not support the existence of a conspiratorial agreement.

Furthermore, considering plaintiff's complaint, plaintiff's response to defendant Hazelroth's answer to the complaint, and plaintiff's response to the instant motion, plaintiff has not shown a genuine issue of material fact with regard to a civil conspiracy claim.  In his complaint, plaintiff alleges that defendants "conspired together by editing their investigative reports to conceal exculpatory information that would have defeated probable cause[] to issue an arrest warrant."  Compl. ¶ 17.  In his response to defendant Hazelroth's answer to plaintiff's complaint, plaintiff states:  "defendant knew that these [officers] conspired against plaintiff to violate plaintiff's constitutional rights," and "defendant alon[g] with the [officers] had concealed

---

[28]Plaintiff cites pages 11-13 of the May 19, 1997 transcript hearing in support of this statement.  Rsp. at 5.  Page 11 is missing from the record.

31

exculpatory information," and "defendant failed to disclose to the magistrate this exculpatory information that might have affected the [magistrate's] determination of the existence of probable cause." Doc. Ent. 22 ¶ 17. Plaintiff also stated that defendant Hazelroth "knew at all times relevant to this incident that plaintiff hadn't committed any crime," and "took certain actions designed to conceal the facts that there was no basis for prosecuting the plaintiff and causing of his arrest." Doc. Ent. 22 ¶ 20. Furthermore, plaintiff stated that defendant Hazelroth's "continuing concealment of exculpatory information aggravated [plaintiff's] injuries, where the illegal prosecution in [itself] was designed to cause plaintiff emotional and physical pain." Doc. Ent. 22 ¶ 21. Additionally, plaintiff stated:

> . . . defendant knew at all times relevant to this action that he knowingly violat[ed] the law . . . the investigation of these allege[d] assaults [was] to be conducted fair[ly] and impartially [to] afford[] plaintiff due process, [and] defendant conspired with the [officers] to violate plaintiff's federal rights[.]

Doc. Ent. 22 ¶ 22.

With specific reference to these portions of plaintiff's complaint and response to defendant's Hazelroth's answer, plaintiff maintains that he "has alleged more than conclusory statements in his complaint and responsive pleadings." Rsp. at 14-15. The Court should disagree and find that these are nothing more than conclusory allegations of a conspiracy. Pursuant to the April 23, 2004 stipulated order modifying scheduling order, discovery concluded on July 1, 2004. (Doc. Ent. 62). Therefore, this is not a case where there has not been an opportunity for the underlying facts to be developed. Nothing beyond conclusory allegations had been offered to establish a conspiratorial agreement, a shared conspiratorial objection or an overt act committed in furtherance of the conspiracy.

32

It is true that "[a] civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000).[29] "'Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, ... circumstantial evidence may provide adequate proof of conspiracy.'" *Weberg*, 229 F.3d at 528 (referencing *Bell v. City of Milwaukee*, 746 F.2d 1205, 1255 (7th Cir.1984)[30]). However, the Court arrived at this conclusion after considering a statement to which plaintiff attested, defendant's interrogatory answers, defendant's deposition testimony, the timing and content of defendant's incident report, and a co-defendant's "efforts to uphold Lauderdale's version of the event despite strong conflicting evidence[.]" *Weberg*, 229 F.3d at 528.  Such detail is not present in the motion papers at bar.

---

[29] In *Weberg*, the Court reversed the district court's "district court's entry of summary judgment in favor of defendant prison officials[.]" *Weberg*, 229 F.3d at 516.

[30] "We therefore overrule our decision in *Bell* insofar as it recognized a constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action." *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005).

In light of the foregoing, the Court should conclude that, to the extent it is brought pursuant to § 1983, plaintiff's conspiracy claim does not survive summary judgment.[31]

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

---

[31]Even plaintiff characterizes defendant Hazelroth's testimony as follows: "Hazelroth had no contact with the corrections officers involved because he normally relies on the reports provided to him in the MDOC Critical Incident Reports. No one else interviewed the staff on his behalf, either." Rsp. at 5.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 3/3/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 3, 2006.

s/Eddrey Butts
Case Manager